**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000334**
**26-FEB-2026**
**08:59 AM**
**Dkt. 166 MO**

NO. CAAP-23-0000334

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
MICHAEL ARLO PAVICH, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2PC011000015(3))

<u>MEMORANDUM OPINION</u>
(By: Nakasone, Chief Judge, Leonard and McCullen, JJ.)

Defendant-Appellant Michael Arlo **Pavich** appeals from the Circuit Court of the Second Circuit's April 20, 2023 Findings of Fact, Conclusions of Law, and Order (**April 2023 Order**).[1]

The April 2023 Order denied Pavich's: (1) Motion to Withdraw Waiver of Right to Pursue Motion for New Trial, filed April 20, 2019 (**2019 Motion to Withdraw Waiver**); (2) Motion for

---

[1] The Honorable Kelsey T. Kawano presided over the post-conviction proceedings from January 24, 2020. The Honorable Joseph E. Cardoza presided over the trial and post-conviction proceedings prior to January 24, 2020.

DNA Analysis Pursuant to Hawaiʻi Revised Statutes (**HRS**) §§ 844D-121 to -124 (2014), filed June 7, 2019; (3) Motion for New Trial, filed March 29, 2021 (**2021 Motion for New Trial**); (4) Emergency Motion to Dismiss Counsel for Defense and for Reconsideration on Motion to Withdraw Waiver of Right to Conduct Peer Review, filed August 23, 2021 (**2021 Motion for Recon**); (5) Motion of Notice and/or Clarification of Matters and Need of Court Assistance, filed September 21, 2021; (6) Motion for Change of Judge, Expedited Ruling Requested, filed March 21, 2022; (7) Emergency Motion to Dismiss, Expedited Hearing and Ruling Requested, filed June 14, 2022; and (8) Defendant's Supplemental Motion to Dismiss, filed June 29, 2022.[2]

In his opening brief, Pavich presents arguments (1) challenging his waiver of his right to a peer review and to move for a new trial (Arguments D and E); (2) challenging the disposal of DNA evidence and failure to turn over DNA material (Arguments A, B, and C); (3) asserting ineffective assistance of

---

[2] The April 2023 Order also granted Pavich's (1) Motion to Supplement Motion for Reconsideration to Withdraw Waiver of Right to Conduct Peer Review, filed March 3, 2022; (2) Motion to Withdraw Counsel for Defense, Expedited Ruling Requested, filed March 21, 2022; (3) Motion to Allow Defendant to Be Pro Per and Steven Slavitt as Stand by Counsel, filed June 3, 2022; and (4) Motion to Exercise Right to Represent Self, Expedited Hearing Requested, filed June 20, 2022.

counsel (Argument F); and (4) asserting prosecutorial misconduct (Argument G).[3]  We affirm.

## I.    BACKGROUND

This case spans twenty-five years.  The factual background of this case was presented at length in State v. Pavich (Pavich I), 119 Hawaiʻi 74, 193 P.3d 1274 (App. 2008). Briefly, in December 2000, Dr. Edward Bird was murdered in his

---

[3]  Pavich's opening brief presents no points of error, in violation of Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4).  Exercising our discretion, we nonetheless address the arguments Pavich presents to the extent possible.  See Erum v. Llego, 147 Hawaiʻi 368, 380, 465 P.3d 815, 827 (2020) ("This court additionally has long adhered to the policy of affording litigants the opportunity to be heard on the merits whenever possible.").

In the argument section of his opening brief, Pavich argues:

A. "Due to the Destruction of the DNA Evidence and all Other Evidence in this Case, This Case Should Be Dismissed on Due Process Grounds";

B. "Due to The Destruction of the DNA Evidence in this case, this Court Should Dismiss Pavich's Convictions Pursuant to HRS [§ 844D]";

C. "The Failure of the State to Turn Over the DNA Material Also Violated HRS [sic] 16(b)(1)(iii)";

D. "The Defendant's Alleged Waiver of His Right to a Peer Review Should Not Prevent Him From Asserting His Due Process Rights at this Time";

E. "Even if This Court Determines that Pavich's Waiver of His Right to a Peer Review is Relevant, It was not a Knowing or Intelligent Waiver";

F. "Aside From The Due Process Violation Stated Above, At The Very Least, The Conviction Should Be Reversed and a New Trial Ordered Based on Ineffective Assistance of Counsel"; and

G. "The State Committed Prosecutorial Misconduct and this Conviction Should be Reversed as a Result."

In an appendix to his reply brief, Pavich presents what he deems are points of error.  However, HRAP Rule 28(d) governing reply briefs does not allow for such a filing, and issues raised for the first time in a reply brief will be deemed waived.  In re Tax Appeal of Hawaiian Flour Mills, Inc., 76 Hawaiʻi 1, 14 n.5, 868 P.2d 419, 432 n.5 (1994) (explaining arguments raised for the first time in the reply brief will be deemed waived).

home.  Id. at 76-77, 193 P.3d at 1276-77.  At the time, Dr. Bird was about eighty-two years old and used a wheelchair.  Id. at 76, 193 P.3d at 1276.

As for the procedural background, a grand jury indicted Pavich for Burglary in the First Degree, Kidnapping, Robbery in the First Degree, Murder in the Second Degree, and Prohibited Acts Related to Drug Paraphernalia.[4]  Id.  Shortly thereafter, the Office of the Public Defender withdrew as Pavich's attorney due to a conflict of interest and Keith S. Shigetomi, Esq. (**Attorney Shigetomi**) was appointed.

Approximately ten months before trial, the State disclosed to Pavich a 2004 forensic report prepared by Genetic Technologies (**Forensic Report**) containing DNA analyses of various pieces of evidence, including napkins with blood-like stains.  Id.  Pavich then had his chosen laboratory, Forensic Science, complete a DNA analysis (**Forensic Science's analysis**), but did not disclose Forensic Science's analysis to the State or identify a Forensic Science expert as a witness.  Id. at 80, 193 P.3d at 1280.  During jury selection, the State disclosed a supplemental forensic report (**Supplemental Report**), also

---

[4]  Pavich was also indicted on one count of Promoting a Dangerous Drug in the Third Degree, but the circuit court granted the State's motion to dismiss this count.  Pavich I, 119 Hawaiʻi at 77 n.2, 193 P.3d at 1277 n.2.

prepared by Genetic Technologies, that included analysis as to one of the napkin stains. Id. at 76, 193 P.3d at 1276.

A jury found Pavich guilty as charged on all counts. Id. at 77, 193 P.3d at 1277.

In November 2005, Pavich moved for approval of litigation costs to conduct a peer review of the Supplemental Report. Id. at 83, 193 P.3d at 1283. Pavich asserted that the Supplemental Report contained new information regarding "a blood stain found on a napkin" recovered from Dr. Bird's apartment. Pavich wanted to conduct a peer review of the new findings in the Supplemental Report and an independent DNA analysis. The circuit court denied Pavich's motion and entered its judgment of conviction and sentence. Pavich appealed.

In August 2006, the circuit court ordered "all evidence in the custody of the State, Genetic Technologies, Maui Police Department and the Court be preserved."

In September 2008, this court held, among other things, that the circuit court erred in refusing to approve Pavich's post-trial request for funds to conduct a peer review of the Supplemental Report. Pavich I, 119 Hawaiʻi at 84, 193 P.3d at 1284. This court explained that because Pavich could not peer review the Supplemental Report, he lacked the information to possibly rebut the testimony of the State's

5

expert, Stephanie Beine (**Beine**) of Genetic Technologies.  Id. at 81, 86, 193 P.3d at 1281, 1286.

This court remanded this case as Pavich was "entitled to funds for a peer review to evaluate the [Supplemental Report] and to move for a new trial after the peer review is conducted." Id. at 86, 193 P.3d at 1286.  This court explained, "If the peer review obtained on remand demonstrates that Beine's testimony was essentially accurate or that the availability of the peer review during trial would not have affected the outcome of the case, then Pavich was not deprived of a fair trial and a new trial is not warranted."  Id.  And "[i]f the circuit court denies the new trial motion, Pavich's convictions shall stand, subject to Pavich's right to appeal the denial of his new trial motion."  Id.

In a footnote, this court stated, "Obviously, Pavich's convictions shall stand if he does not file a new trial motion after completion of the peer review."  Id. at 86 n.13, 193 P.3d at 1286 n.13.

In April 2009, on remand, the circuit court held a status conference during which Pavich stated he did not want to proceed with the peer review or file a motion for new trial. Attorney Shigetomi explained that Pavich was aware that his convictions would then stand.  Attorney Shigetomi also informed

the circuit court that he advised Pavich against this course of action.

The circuit court questioned Pavich, explaining this court's decision in Pavich I in detail and asking if Pavich understood.  Pavich indicated he understood.  Pavich then addressed the court, explaining that "the Lord" helped him see it was "not right" to pursue his case because he "participated in this crime":

> [Pavich]:  Yes, your Honor.  I understand the Court's position and their ruling.  I understand the potential that is there to pursue the case further, and what I'd like to make clear is that because of the testimony of the Lord in my life, the Lord Jesus Christ, he's made aware to me that it's not right in his eyes to pursue this case because of the fact that regardless of what this evidence does or does not say, I would like to now take the position and make the Court aware that I have been involved in this case.
>
> I have neglected responsibility and that's not right for me to pursue any type of benefit towards my conviction because of the fact that, in simplicity, I participated in this crime and the crimes therefore that I'm charged with.
>
> So because of those reasons and basically because God has made it clear to me that it is not his will for me to partake in this, therefore, I accept the responsibility that has been given and the conviction that stands and, you know, I'll just stick with that and seek the things that are eternal and not temporal in regard to freedom.
>
> [Circuit Court]:  I understand.  Thank you for elaborating on that.  I understand your position.
>
> [Pavich]:  Okay.
>
> [Circuit Court]:  So you understand -- in that footnote where the Intermediate Court of Appeals says, "Obviously, Pavich's convictions shall stand if he does not file a new trial motion after completion of peer review in this case," you understand there won't be any peer review and there wouldn't be any new trial motion so your conviction will stand.  Do you understand that?
>
> [Pavich]:  Yes, Judge.  That's the position that I'm directed to accept.

7

> [Circuit Court]: All right. When you say "directed to accept," you mean based on your --
>
> [Pavich]: My relationship with Jesus Christ.
>
> [Circuit Court]: I understand.
>
> All right. Well, that all makes sense to the Court, and I do understand that you've taken a broader view of this, that you understand your rights and that --
>
> [Pavich]: Absolutely.

The circuit court determined Pavich made an intelligent, knowing, and voluntary waiver of his right to pursue the courses of action afforded by Pavich I:

> [Circuit Court]: -- and you at this time have determined that in looking at the broader picture, the right thing to do is not to pursue anything but to accept responsibility. I'm satisfied that you have made an intelligent, knowing and voluntary waiver of your right to pursue any of these courses of action; that you wish to accept responsibility and you've done so after consultation with counsel.

The circuit court informed Pavich that it was inclined to relieve Attorney Shigetomi of any further obligations regarding peer review and the motion for new trial, but continue Attorney Shigetomi's representation of Pavich for "any dealings with the Paroling Authority," and asked if Pavich agreed. Pavich answered in the affirmative.

Regarding Forensic Science's analysis for Pavich, the circuit court ordered Attorney Shigetomi to "maintain custody and control of [Forensic Science's analysis] even though [Attorney Shigetomi was] not in active participation and the case [was] coming to a close." Attorney Shigetomi responded

that he did not think he discarded Forensic Science's analysis, but he would have to find it.

In August 2010, over a year later, the State requested to withdraw its exhibits from the court, which the circuit court approved. The State's exhibit list did not indicate that the actual napkins were offered for identification or received in evidence.

That same day, the circuit court entered an order disposing of Pavich's exhibits in its custody pursuant to HRS § 606-4 (1993)[5] and noting verbal approval by Attorney Shigetomi.

_____

[5] HRS § 606-4 was last amended in 2016, after the circuit court entered its August 2010 order deeming the evidence abandoned and ordering its disposal. Thus, the circuit court cited the 1993 version of HRS § 606-4, which provided:

> **§ 606-4 Custody; disposition of exhibits.** The clerks of the supreme, intermediate appellate court, circuit, and district courts shall have the custody of all records, books, papers, moneys, exhibits, and other things pertaining to their respective courts.
>
> The attorney of the party who introduced the exhibits or things in evidence or left them in the custody of the court, or the party, if not represented by any attorney, shall remove them from the court within six months after the final termination of the action to which the exhibits or things are related. The clerks shall have the authority and power, upon the written approval of a judge of the court given in particular actions or proceedings, to sell, destroy, or otherwise dispose of exhibits and things marked for identification, other than original files belonging to other actions, which have come into their possession or custody under this section, when such exhibits or things have not been already removed by their owners or by the attorneys representing the owners and when more than six months has elapsed since the final termination of the action to which the exhibits or things are related.
>
> (continued . . .)

Pavich's exhibit list indicates a "Letter from Robert Rivera to Keith Tanaka" was offered for identification and received in evidence. Pavich's amended exhibit list showed the Forensic Report, the Supplemental Report, and Forensic Science's analysis were received in evidence.

In July 2017, nearly seven years later, Pavich requested counsel for post-conviction relief and filed other letters claiming Attorney Shigetomi was ineffective. The circuit court directed Pavich to go through Attorney Shigetomi who remained Pavich's attorney of record as Attorney Shigetomi had not withdrawn.

In April 2019, roughly ten years after waiving his right to conduct a peer review of the Supplemental Report and to file a motion for a new trial, Pavich filed, through Attorney Shigetomi, the 2019 Motion to Withdraw Waiver. Pavich asserted his waiver was not intelligent, knowing, or voluntary. Anticipating that he might be required to serve as a witness in the case, Attorney Shigetomi moved to withdraw as counsel. The circuit court granted Attorney Shigetomi's motion.

---

(. . . continued)

> All moneys received from sales under this section shall be forthwith deposited with the state director of finance as government realizations.

(Formatting altered and emphases added.)

John Parker, Esq. (**Attorney Parker**) was appointed counsel. Attorney Parker requested funds to conduct an independent DNA analysis pursuant to Pavich I.

In June 2019, during a status conference, the State informed the circuit court that all DNA evidence was destroyed in November 2011. The circuit court ordered both parties to "prepare statement of facts of background of handling of the evidence and any destruction of evidence." The State reported that Genetic Technologies tested the DNA material and returned all items to Maui Police Department; Maui Police Department received the four "napkins with blood-like stains" in 2005 and disposed of those four napkins on November 25, 2011.

From November 2019, and "[o]ver the course of the next 15 months, approximately 12 hearings were held, and $19,000 was spent on DNA matters." In the end, the State determined it "would not be able to produce the data necessary to do the peer review."

In March 2021, Pavich moved again to withdraw his waiver (**2021 Motion to Withdraw Waiver**) and filed the 2021 Motion for New Trial. Attorney Parker filed both motions. The 2021 Motion to Withdraw Waiver alleged the circuit court's colloquy was defective. In July 2021, the circuit court held a hearing on the 2021 Motion to Withdraw Waiver. During the hearing, Pavich asked the circuit court to find that he "did not

knowingly, intelligently and voluntarily waive his right to a -- to the process of getting peer review."

The circuit court denied the motion. In considering the totality of circumstances, the circuit court found the exchange regarding waiver "was reasonable and not deficient." The circuit court further found "there was not an iota, not a scintilla of evidence to indicate that [Pavich] was afflicted by any mental health condition," and the document Pavich submitted under seal was "inadmissible for establishing that fact."

On August 5, 2021, the circuit court entered its order specifically denying the 2021 Motion to Withdraw Waiver filed by Attorney Parker (**Order Denying 2021 Motion to Withdraw Waiver**). This order did not address the 2019 Motion to Withdraw Waiver filed by Attorney Shigetomi. Pavich did not appeal from this post-judgment order.

On August 23, 2021, Pavich himself filed the 2021 Motion for Recon, which also requested Attorney Parker's dismissal. The next day, Attorney Parker moved to withdraw from his appointment as Pavich's counsel, citing Pavich's motion. The circuit court granted Attorney Parker's motion to withdraw and appointed Steven Slavitt, Esq.

Pavich filed subsequent motions. A number of Pavich's motions were resolved in the April 2023 Order, including the 2019 Motion to Withdraw Waiver filed by Attorney Shigetomi, the

2021 Motion for New Trial filed by Attorney Parker, and the 2021 Motion for Recon filed by Pavich himself. Pavich appeals from the April 2023 Order.

## II. DISCUSSION

Again, Pavich (1) challenges his waiver of his right to a peer review and to move for a new trial; (2) challenges the disposal of DNA evidence and failure to turn over DNA material; (3) asserts ineffective assistance of counsel; and (4) asserts prosecutorial misconduct. We affirm.

### A. Pavich's Waiver of His Right to Conduct a Peer Review and to Move for New Trial Stands

Pavich challenges his waiver of his right to conduct a peer review and to move for a new trial (Arguments D and E). Pavich argues his waiver was not knowing or intelligent because the circuit court did not engage in a "true colloquy" as it did "not ask any questions to see if Pavich really understood the rights he was waiving."

The April 2023 Order from which Pavich appeals resolved the 2019 Motion to Withdraw Waiver filed by Attorney Shigetomi. The circuit court concluded that, to the extent the 2019 Motion to Withdraw Waiver filed by Attorney Shigetomi "was not rendered moot by the [Order Denying 2021 Motion to Withdraw Waiver], it is nevertheless also properly Denied and will be so ordered." The circuit court then concluded that "Pavich

knowingly, intelligently, and voluntarily waived his right to conduct peer review and pursue any new trial in this case."

The 2019 Motion to Withdraw Waiver filed by Attorney Shigetomi asserted that Pavich "did not intentionally, knowing or voluntarily waive his right to pursue a peer review or his motion for New Trial." Similarly, the 2021 Motion to Withdraw Waiver filed by Attorney Parker, was based in part on Pavich not intelligently, knowingly, or voluntarily waiving his right to conduct a peer review of the Supplemental Report.

Because the circuit court denied the 2021 Motion to Withdraw Waiver filed by Attorney Parker, the issue of whether Pavich intelligently, knowingly, and voluntarily waived his right to conduct a peer review was already ruled upon. Thus, the 2019 Motion to Withdraw Waiver filed by Attorney Shigetomi raising the same issue was rendered moot by the Order Denying 2021 Motion to Withdraw Waiver.

And because Pavich did not appeal from the Order Denying 2021 Motion to Withdraw Waiver, this court lacks jurisdiction to review that order. State v. Brandimart, 68 Haw. 495, 496, 720 P.2d 1009, 1010 (1986) (explaining that a motion for reconsideration does not toll the time to appeal).

In sum, the circuit court did not err in denying the 2019 Motion to Withdraw Waiver filed by Attorney Shigetomi. Thus, Pavich's waiver of his right to conduct a peer review

14

stands.  As the right to move for a new trial hinged on the peer review of the Supplemental Report, that waiver also stands.

**B.   Pavich's Conviction Stands in Light of His Waiver**

Pavich next challenges the destruction of the DNA evidence and the failure to turn over DNA material (Arguments A, B, and C).  Pavich argues that the destruction of the DNA evidence amounted to a violation of his due process rights.  Pavich relies on (a) Brady v. Maryland, 373 U.S. 83 (1963), (b) HRS § 844D-126 (Supp. 2005), and (c) Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 16(b)(1)(iii).

### 1.   Brady

Pavich provides no authority to show Brady applies in this situation.  To the contrary, the U.S. Supreme Court has expressly held that "Brady is the wrong framework" for a defendant's rights in post-conviction proceedings.  Dist. Att'y's Off. for Third Jud. Dist. v. Osborne, 557 U.S. 52, 69 (2009).

### 2.   HRS § 844D-126

HRS § 844D-126 governs the retention of biological evidence and requires the evidence to be retained until the latter of the exhaustion of all appeals or the completion of the

15

imposed sentence to which the evidence relates.[6]  Thus, the biological evidence (i.e., four napkins with blood-like stains) should have been retained.

We note that HRS Chapter 844D does not expressly provide penalties for violating HRS § 844D-126.

And, although Pavich was afforded an opportunity to conduct a peer review of the Supplemental Report, he did not pursue it.  Disregarding the advice of Attorney Shigetomi, Pavich expressly waived his right to conduct a peer review of the Supplemental Report.  As discussed above, this waiver stands.

---

[6]  HRS § 844D-126 (Supp. 2005) provides:

**[§ 844D-126]  Retention of biological evidence.**

(a)  All evidence in the custody or control of a police department, prosecuting attorney, laboratory, or court that is related to the investigation or prosecution of a case in which there has been a judgment of conviction and that may contain biological evidence that could be used for DNA analysis <u>shall be retained</u> at least until the later occurring of either:

(1)  The exhaustion of all appeals of the case to which the evidence is related; or

(2)  The <u>completion of any sentence</u>, including any term of probation or parole, imposed on the defendant in the case to which the evidence relates.

(b)  The attorney general shall establish procedures and protocols, which shall be uniform throughout the State, for the collection and preservation of evidence retained pursuant to this section.

(Formatting altered and emphases added.)

A year after Pavich's waiver, the State moved to withdraw its evidence from the circuit court, and the circuit court ordered that Pavich's evidence be "deemed abandoned and disposed of" pursuant to HRS § 606-4.

A decade after waiving his right to conduct a peer review, Pavich sought to challenge his waiver. By then, defense counsel did not have Forensic Science's analysis and Maui Police Department did not have the four napkins. Efforts were made and funds were expended to determine whether a peer review could be conducted. In the end, a peer review could not be conducted.

Thus, in light of Pavich's waiver, we decline to vacate his convictions under HRS § 844D-126.

### 3.    HRPP Rule 16(b)(1)(iii)

Pavich appears to argue the State violated HRPP Rule 16(b)(1)(iii)[7] because it "not only utterly failed to

---

[7] Pavich actually argues the State violated "HRS 16(b)(1)(iii)," but no such revised statute exists.

Under Arraignment and Preparation for Trial, HRPP Rule 16(b)(1)(iii) governs Discovery disclosures by the prosecution:

> **Rule 16.   DISCOVERY.**
>
> . . . .
>
> **(b)   Disclosure by the Prosecution.**
>
> (1)   DISCLOSURE OF MATTERS WITHIN PROSECUTION'S POSSESSION. The prosecutor shall disclose to the defendant or the defendant's attorney the following material and information within the prosecutor's possession or control:
>
> . . . .
>
> (continued . . .)

produce the discovery of the [Supplemental Report] requested by the defense and ordered compelled by this Court, it then failed to have the Maui Police Department and [Genetic Technologies] preserve the materials."

However, in his opening brief, Pavich does not identify the order to which he refers, and the State produced the Supplemental Report during trial. See HRPP Rule 16(e)(2) ("CONTINUING DUTY TO DISCLOSE. If subsequent to compliance with these rules or orders entered pursuant to these rules, a party discovers additional material or information which would have been subject to disclosure pursuant to this Rule 16, that party shall promptly disclose the additional material or information, and if the additional material or information is discovered during trial, the court shall also be notified.").

Under these circumstances, we decline to vacate Pavich's conviction under HRPP Rule 16(b)(1)(iii).

---

(. . . continued)

(iii) any reports or statements of experts, which were made in connection with the particular case or which the prosecutor intends to introduce, or which are material to the preparation of the defense and are specifically designated in writing by defense counsel, including results of physical or mental examinations and of scientific tests, experiments, or comparisons[.]

(Formatting altered.)

**C.    No Ineffective Assistance of Counsel**

Pavich next asserts that Attorney Shigetomi and Attorney Parker were ineffective (Argument F).

For claims of ineffective assistance of counsel, we look at whether the "assistance was within the range of competence demanded of attorneys in criminal cases":

> When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases.  The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test:  1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.  To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense.  A defendant need not prove actual prejudice.

State v. Yuen, 154 Hawaiʻi 434, 443-44, 555 P.3d 121, 130-31 (2024) (quoting State v. Wakisaka, 102 Hawaiʻi 504, 513-14, 78 P.3d 317, 326-27 (2003)).

**1.    Attorney Shigetomi**

In particular, Pavich argues Attorney Shigetomi was ineffective because, regarding Beine's testimony, he did not bring a motion in limine, object to the testimony, or seek a continuance.  Pavich, however, has not shown that the Supplemental Report and Beine's testimony were inadmissible.  See State v. Richie, 88 Hawaiʻi 19, 40, 960 P.2d 1227, 1248 (1998) ("Failing to object to admissible evidence cannot be considered an error or omission.").  And Attorney Shigetomi did

19

move for a continuance and to compel production of Genetic Technologies' DNA evidence to allow Forensic Science to conduct a peer review of the Supplemental Report.

Pavich also argues that Attorney Shigetomi did not call James Welling to testify. But Pavich provides no sworn statement describing Welling's expected testimony. See id. at 39, 960 P.2d at 1247 ("Ineffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses.").

And Pavich argues that Attorney Shigetomi did not request the evidence be preserved after his waiver, approved the destruction of the evidence retained by the circuit court, and destroyed the evidence in his possession. Against Attorney Shigetomi's advice, Pavich expressly waived his right to a peer review, expressly waived his right to move for a new trial, and expressly stated he participated in the crimes with which he was charged. When the circuit court ordered Attorney Shigetomi to preserve the analysis from Forensic Science (Pavich's expert), Attorney Shigetomi indicated he would but needed to locate it first. In addition, the circuit court disposed of Pavich's evidence in its possession under HRS § 606-4, for which it did not need Attorney Shigetomi's permission.

Under these facts, we cannot say Attorney Shigetomi's assistance was not "within the range of competence demanded of attorneys in criminal cases." See Yuen, 154 Hawaiʻi at 443-44, 555 P.3d at 130-31.

### 2. **Attorney Parker**

Pavich argues that Attorney Parker should have subpoenaed Maui Police Department, the State, and Genetic Technologies regarding the destruction of evidence. This was unnecessary because the circuit court ordered the parties to present a statement of facts regarding the circumstances surrounding the DNA evidence.

Pavich also argues that Attorney Parker spent his time on a motion to withdraw his waiver rather than a motion for new trial. Attorney Parker filed both the 2021 Motion to Withdraw Waiver and the 2021 Motion for New Trial.

And Pavich argues that Attorney Parker failed to call a mental health expert to look at Pavich's mental health at the time of his 2009 waiver. But Pavich provides no sworn statement and fails to explain how a newly hired mental health expert would, in 2019, opine as to Pavich's mental health at the time of the waiver, in 2009. See Richie, 88 Hawaiʻi at 39, 960 P.2d at 1247.

Under these facts, we cannot say Attorney Parker's assistance was not "within the range of competence demanded of

21

attorneys in criminal cases."  See Yuen, 154 Hawaiʻi at 443-44, 555 P.3d at 130-31.

**D.  No Prosecutorial Misconduct**

Finally, Pavich asserts the State committed prosecutorial misconduct (Argument G).

For prosecutorial misconduct claims, this court must decide if the conduct was improper, and if so, whether the conduct was harmless beyond a reasonable doubt.  State v. Willis, 156 Hawaiʻi 195, 204, 572 P.3d 668, 677 (2025).

Pavich makes various arguments based on the State's conduct prior to and during trial.  These arguments could have been raised during Pavich's first direct appeal, Pavich I, and Pavich did not do so.  See 119 Hawaiʻi at 77, 193 P.3d at 1277. Therefore, Pavich's prosecutorial misconduct claims based on the State's conduct at trial are waived.

Pavich also argues that the State engaged in prosecutorial misconduct because it failed to turn over the DNA evidence pursuant to Pavich I.  The State did not turn over the DNA evidence pursuant to Pavich I because, after the case was remanded, Pavich waived his right to conduct a peer review of the Supplemental Report.

Pavich also argues that the prosecutor committed misconduct because "[t]here is no evidence in the record that the State followed any protocols under HRS [§] 844D to preserve

22

this DNA evidence."  Beyond this statement, Pavich does not identify which "protocol" the prosecutor violated.  And, as discussed above, we decline to vacate Pavich's convictions under HRS § 844D-126 because his waiver of his right to conduct a peer review of the Supplemental Report stands.

### III. CONCLUSION

Based on the foregoing, we affirm the circuit court's April 2023 Order.

DATED:  Honolulu, Hawaiʻi, February 26, 2026.

On the briefs:

Steven Slavitt,
for Defendant-Appellant.

Richard B. Rost,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge